IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ACELLA PHARMACEUTICALS, LLC,

       Plaintiff,

v.

CHEMO S.A. FRANCE,

       Defendant.

Civil Action No. 2:13-cv-573-HCM-DEM

## ACELLA'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Acella Pharmaceuticals, LLC ("Acella"), by counsel, pursuant to Fed. R. Civ. P.

12(b) and Local Rule 7, submits this Opposition to Defendant's Motion to Dismiss for Lack of

Subject Matter Jurisdiction.  For the reasons below, the motion should be denied.

## INTRODUCTION

Acella has been sued by Everett Laboratories, Inc. ("Everett"), a "corporate affiliate" of

Defendant Chemo S.A. France ("Chemo"), in the New Jersey District Court for infringement of a

patent that Chemo purports to own.  *See Everett Labs., Inc. v. Acella Pharms., LLC*, Civ. No.

1:13-03470 (D.N.J.), Complaint (Dkt. No. 1), at ¶ 15 ("New Jersey Action").  Chemo is a foreign

entity that obtained, from the United States Patent and Trademark Office ("USPTO"), the patent

upon which the New Jersey Action is based.  Faced with the threat of infringing that patent,

Acella now asserts in this declaratory judgment action that Chemo's patent is invalid.  Despite

owning the patent involved in this action and taking affirmative actions in enforcing it against

Acella, Chemo asserts that there is no controversy between Acella and Chemo over the validity

of Chemo's patent.  As set forth herein, however, a controversy exists over the validity of the

patent sufficient to create declaratory judgment jurisdiction and Chemo's motion to dismiss cannot withstand scrutiny.

## BACKGROUND

Acella sells prescription-only prenatal vitamins, including the PNV-First product, which is one of the products involved in the New Jersey Action.[1]  In November 2012, the USPTO issued U.S. Patent No. 8,183,227 ("the '227 patent") to Everett.  In June 2013, Everett brought suit against Acella for infringing the '227 patent and filed a motion to preliminarily enjoin Acella from selling the PNV-First product.  On August 29, 2013, Judge Irenas of the United States District Court for the District of New Jersey denied Everett's motion for a preliminary injunction against Acella.  On September 13, 2013, Judge Irenas modified his original August ruling and found both that Acella had shown that the validity of the '227 patent was vulnerable at the preliminary injunction stage and that Everett had not met its burden on irreparable harm.  After Everett lost its preliminary injunction motion, the New Jersey Court entered a scheduling order, but discovery has been stalled as disputes are yet to be resolved by the Court over a suitable discovery confidentiality order.

Acella went to great measures in trying to avoid having to bring the current action against Chemo.  In particular, Acella requested that Chemo (i) agree, in writing, that it would be bound by any judgment concerning the '227 patent in the New Jersey Action, and (ii) participate in discovery in the New Jersey Action as if it were a party to that action.  *See* Chemo Mem. Ex. 8 (Dkt. No. 15-8).  Acella is highly concerned as to whether Chemo would attempt to find additional patent infringement causes of action against Acella after the issuance of any judgment

---

[1] Four of Acella's products have been accused of infringing either patents owned by Everett or U.S. Patent No. 8,183,227, which is the only patent involved in the New Jersey Action that is owned by Chemo.

2

in New Jersey and also knows that Chemo will likely have highly relevant documents and testimony relating to the invalidity of the '227 patent. The inventors of the '227 patent—Messrs. Perrin and Herry—are, or were, Chemo employees. Obviously, Chemo will have highly relevant documents and information specifically related to research and development documents, patent documents, and licenses, as well as many other highly relevant documents. Despite Acella's very reasonable requests, Chemo refused to agree in writing to be bound by the New Jersey Action. *See* Chemo Mem. Ex. 8 (Dkt. No. 15-9).[2]

Although Chemo goes to great lengths in its motion in an attempt to show that Acella had received from Everett ample documentation to evidence a valid license between Chemo and Everett for the '227 patent, those statements are misleading. In the New Jersey Action, Everett was required to produce to Acella "[a]ll documents evidencing ownership of the patent rights by the party asserting patent infringement." District of New Jersey Local Patent Rule 3.4(d). Despite this requirement, the alleged license agreement between Chemo and Everett originally provided to Acella was signed by only Chemo and was, thus, not a valid, enforceable agreement. In fact, at the time Acella filed the present action, it appeared to Acella that the license was only a draft that Chemo had signed and had sent to Everett.[3] Thus, when Acella filed its Original Complaint in the present action, there had been insufficient evidence provided to Acella to indicate the existence of any valid and enforceable license agreement that might even arguably preclude Chemo from filing a patent infringement suit against Acella.

---

[2] Everett did, however, ultimately agree to produce Messrs. Perrin and Herry for depositions in the United States, but only after much discussion and negotiations between attorneys, resulting in greatly increased litigation costs.

[3] Everett had produced a purported "Amendment" to a license agreement between Chemo and Everett, but a fully-executed underlying agreement was not produced until very late in the game.

Finally, on November 22, 2013, and only after an Everett witness was questioned about the existence of a valid and executed license agreement for the '227 patent, Everett belatedly produced a license agreement purporting to have the earlier signatures of each party. After these supplemental documents were provided, Acella prepared and filed an Amended Complaint, including allegations that have not been addressed by Chemo in its pending motion to dismiss.[4] As set forth later herein, Chemo's motion to dismiss should be dismissed for the simple reason that Chemo did not address the current jurisdictional allegations of the Amended Complaint.[5]

Chemo has shown its true colors in its futile attempts to avoid service of the Summons and Original Complaint in this case. Chemo tried to do anything it could to avoid being sued in the Eastern District of Virginia as a foreign patent owner, despite the existence of a federal statute that says that jurisdiction over foreign patent owners is based in this District. *See* 35 U.S.C. § 293.

For example, after filing the original Complaint in this case, the Court ordered that service was to be effected by publication, delivery to Everett, and delivery to Don Pelto. Service by publication was easy and effected within a few days of the Court's order. However, delivery of the summons and complaint to Everett and to Mr. Pelto was costly, burdensome, and extremely difficult. Specifically, when service was attempted upon Everett, its CEO, Mr. Lucas Sigman, responded by calling the police, contacting an attorney, and having the police remove the process server from the premises without effecting service. Certification of Process Server

---

[4] Technically, Chemo's motion to dismiss should be moot but, as explained herein, Chemo refused to renew its motion or refile it, despite being requested by Acella to do so.

[5] If the Court denies Chemo's present motion, Chemo should not be allowed to file a new motion to dismiss the Amended Complaint. It had the opportunity to do so, and it chose not to.

(Ex. A).[6]  In similar fashion, when Acella attempted to serve Mr. Pelto, a lawyer in the same firm as Chemo's counsel of record in the present action, the person serving the papers was initially refused access to the receptionist.  On a subsequent attempt, apparently someone had instructed Mr. Pelto's mailroom to refuse the delivery and to call the police if the papers were left.  The server was threatened by building security with arrest by police.  After the expenditure of much unnecessary time and expense, Chemo finally agreed to accept service.  Since the service of the present action upon Chemo, Acella has been threatened with two Rule 11 motions—one for the filing of the Original Complaint and now one for the filing of the Amended Complaint.  Those threats are without merit, and whether Chemo will follow through with the filing of the Rule 11 motion at the end of this month remains to be seen.

After finally agreeing to take delivery of the summons and complaint, Chemo's evasive tactics, obviously designed to increase the burden on Acella and the expense of this litigation, have continued.  For example, after filing the Amended Complaint to clarify its pleading concerning jurisdiction in view of the newly-received information, Acella's counsel inquired of Chemo's counsel as to whether the motion to dismiss would be maintained in view of the Amended Complaint.  In particular, Acella's counsel sought to determine if the motion would be withdrawn if Chemo agreed that the perceived issues were resolved by the Amended Complaint or, alternatively, if a new motion would be filed given that the original Complaint was superseded.  This inquiry was premised upon basic case law.  *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (explaining that, "[a]s a general rule, 'an amended pleading

---

[6]  In addition to unnecessarily increasing the costs of this litigation, such actions may also be criminal.  *See* 18 U.S.C. § 1501 (providing that "[w]hoever knowingly and willingly obstructs, resists or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States . . . shall, except as otherwise provided by law, be fined not more than $300 or imprisoned not more than one year, or both").

ordinarily supersedes the original and renders it of no legal effect'") (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.* (*In re Crysen/Montenay Energy Co.*), 226 F.3d 160, 162 (2d Cir. 2000)); *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 Fed. App'x 197, 202 (4th Cir. 2001) (concluding that the district court erred in considering allegations in the original complaint to dismiss the amended complaint, since the amended complaint superseded the original).   In response, Chemo's counsel refused (and has continued to refuse) to confirm Chemo's position on its motion, suggesting that any response would somehow disclose "legal advice."

In addition to refusing to confirm if its mooted motion would be maintained, Chemo refused to agree to a two-day extension for Acella to file the present response.   In particular, Acella requested the two-day extension in light of the fact that a settlement conference is scheduled to occur tomorrow, one day after the deadline for filing the present response.   The request to consent was flatly denied.   As such, Acella is forced to respond to the current motion.

Despite Chemo's efforts to avoid justice on the merits in this case, Chemo is actively involved in the enforcement of the '227 patent and subject matter jurisdiction is established.   As such, Chemo's motion should be denied.

## <u>LEGAL ANALYSIS</u>

### A.   Plaintiff's Motion is Moot.

After Acella was belatedly provided by Everett with additional information pertaining to the ownership of the '227 patent, an Amended Complaint was filed.   Because the Amended Complaint displaces and supersedes the original Complaint, Chemo's current motion to amend the original Complaint is moot.   *See, e.g.*, *Young*, 238 F.3d at 572 (amended pleading renders original pleading of no effect); *Colin v. Marconi Commerce Sys. Employees' Retirement Plan*, 335 F. Supp. 2d 590, 614 (M.D.N.C. 2004) (defendants' earlier motion for summary judgment as

to one count of first amended complaint rendered moot by filing of plaintiff's second amended complaint); *Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot motion to dismiss original complaint on grounds that amended complaint superseded original complaint).

Chemo's pending motion is primarily premised upon its disagreement with Acella's original allegation that Acella has a "reasonable apprehension" of suit by Chemo.  However, Chemo's current motion fails to address any of the jurisdictional allegations present in the Amended Complaint.  Thus, even if Chemo were correct and Acella did not have a "reasonable apprehension of suit from Chemo," that is not the jurisdictional allegation of the Amended Complaint.  As such, Chemo's arguments in its motion are not only wrong, but they are also irrelevant to the jurisdiction of this Court over Chemo based on the allegations in the Amended Complaint.

The fact that Chemo has not argued a lack of jurisdiction based on the current jurisdictional allegations in the Amended Complaint should, by itself, result in a denial of Chemo's motion to dismiss.  And, if Chemo files a reply brief addressing those current jurisdictional allegations for the first time, it should be stricken immediately.  As set forth above, Acella asked Chemo if it planned to file another motion to dismiss or withdraw the present motion.  Chemo responded that it could not reveal that information to Acella because it was the giving of "legal advice."  In addition to denying Chemo the right to file a reply brief addressing the current jurisdictional allegations, the Court should also not allow Chemo to file a new motion to dismiss to address those allegations.  Chemo has already had one bite at the apple.  Acella invited it to take a second bite and Chemo refused.  Chemo should not be allowed now to take that second bite.

### B.  Subject Matter Jurisdiction Exists

Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Supreme Court has explained that its "decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).   Summarizing the appropriate standard, the Supreme Court explained: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* (quoting *Md. Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).   Here, as set forth in detail below, an actual, substantial controversy exists, and the Court has declaratory judgment subject matter jurisdiction over this case.

### 1.  Affirmative Acts of Enforcement by Chemo Against Acella Are <u>Not</u> Required for Jurisdiction

As an initial matter, Chemo attempts to transform dicta in a Federal Circuit opinion into a per se requirement when it comes to what acts can create jurisdiction.  However, neither the Federal Circuit's nor the Supreme Court's case law supports such an overgeneralization.  It is true that the Federal Circuit has stated that "[i]n the context of conduct prior to the existence of a license [between parties to the lawsuit], declaratory judgment jurisdiction ***generally*** will not arise merely on the basis that a party learns of the existence of a patent owned by another or even

8

perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007) (emphasis added). However, Chemo attempts to transform this ***general*** statement into an ***absolute*** requirement, which expressly contradicts Supreme Court precedent that requires a Court to look at the facts in each case. *See Arris Group, Inc. v. British Telecom. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011) ("Under the Court's new standard, an Article III case or controversy exists when 'the facts alleged, **under all the circumstances**, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (quoting *MedImmune*, 549 U.S. at 127) (emphasis added)). Indeed, the Federal Circuit has even recognized that "direct communication between a patentee and a declaratory plaintiff is not necessary to confer standing." *Id.* at 1378.

Thus, the commission of affirmative acts by the patentee is not dispositive, and the Court should focus on the totality of the circumstances. In this case, the totality of the circumstances, including several affirmative acts that Chemo has, in fact, committed against Acella with respect to the enforcement of the '227 patent, shows that jurisdiction is proper.

## 2. The Totality of Circumstances Supports Jurisdiction in this Case

As discussed in detail below, and when the totality of circumstances is considered, it is clear that the Court has subject matter jurisdiction over this case. For example, Chemo has taken affirmative acts with respect to the enforcement of the '227 patent against Acella. In addition, Chemo has flatly refused to agree in writing that it will be bound by any judgment with respect to the '227 patent in the New Jersey Action. Further, although Chemo makes much of its arguments that it cannot, and will not, sue Acella for infringing the '227 patent, these arguments are unavailing and insufficient to defeat jurisdiction in this case.

### a. Chemo Has Taken Affirmative Actions in Enforcing the '227 Patent Against Acella

Chemo—despite its representations to the contrary—has engaged in affirmative acts against Acella that justify jurisdiction in this case.  In particular, Chemo (1) has assisted Everett in enforcing the '227 patent against Acella in the New Jersey Action, (2) would be integral to and is, in fact, required for any settlement of the New Jersey Action, and (3) has refused to agree that it will be bound by the New Jersey Action judgment.  For at least these reasons, subject matter jurisdiction is present in this case.

Although Chemo attempts to portray itself as a passive entity with respect to the '227 patent, the evidence belies that characterization.  For example, when Everett sought its failed preliminary injunction against Acella in the New Jersey Action, an employee of Chemo, Cecile Boyer-Joubert, submitted a declaration with exhibits in support of the preliminary injunction. *See* Declaration of Cecile Boyer-Joubert (Ex. B).  Such actions are not indicative of the type of passive, uninvolved role that Chemo would have this Court believe it is taking.  To the contrary, such actions undeniably exemplify the active role that Chemo is taking in enforcing the '227 patent.

Furthermore, such actions are expressly contemplated by Chemo's purported license agreement with Everett (the one that Everett only recently provided to Acella).  In particular, the License Agreement provides:

> In the case CHEMO incurs in Legal Expenses (including both in-house and off legal and expert counsel) to defend the Product from any third party claim or infringement of the "Intellectual Property Rights" that might affect the commercialization of the Product in the Territory, the Parties will enter into discussions to determine the cost and expenses to be repaid by EVERETT to CHEMO.

License Agreement ¶ 6.1 (Dkt. No. 15-2).    Thus, as expressly provided in the License Agreement, it was anticipated that Chemo would be actively involved in enforcement efforts relating to the '227 patent and, as set forth above, that is precisely the case here.   Whether it is by way of providing witnesses, discovery, or declarations, Chemo is clearly going to be actively involved in the New Jersey Action.   As such, Chemo's argument that it has committed no affirmative acts with respect to the enforcement of its '227 patent is contrary to the actual evidence.

In addition, Everett's CEO has admitted to Acella's COO that that the New Jersey Action could not be settled without consent from someone in the Chemo organization.   Declaration of Arthur Deas ¶ 4 (Ex. C).   Based on other statements that were made by Everett's CEO to Acella's COO, it is clear that the Chemo employee whose consent is necessary is Raul Kohan, *id.* ¶ 5; *see also* Sigman Email (Ex. D), who is apparently Chemo's President of Pharmaceutical Business. This unequivocally indicates that Chemo is not the passive bystander that it would have the Court to believe.   Quite to the contrary, Chemo has assisted in enforcing the patents against Acella and will be involved in any settlement decisions.[7]

Finally, it is apparent from Everett's own website that Chemo, which is an arm of The Chemo Group's corporate umbrella, is involved in the efforts relating to the '227 patent.   For example, Everett's website provides: "In 2010 The Chemo Group acquired Everett to gain positioning in the US Women's Healthcare Market."   *See* Everett Website, About Us, *available at http://www.everettlabs.com/content/about-us*.   Notably in this regard, an assertion of patent

---

[7] Acella has additional evidence to support certain positions presented in this Memorandum. However, certain information has been designated as subject to a Confidentiality Order in the New Jersey Action.   Acella has explained that the information is not properly designated as confidential and, given Everett's refusal to de-designate that information as confidential, Acella has raised this issue with the Court in the New Jersey Action.   Once that issue is resolved, Acella anticipates submitting additional evidence in supplement to this response.

rights sufficient to create declaratory judgment jurisdiction can be implied.  *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362–63 (Fed. Cir. 2009) (finding subject matter jurisdiction based on an implied assertion of patent rights where defendant wrote letter to plaintiff identifying defendant's patent as "relevant" to plaintiff's products, imposing a short deadline for response, and requesting that the plaintiff not file suit).  Thus, there can be little doubt that Chemo is using Everett as a vehicle for its own patent enforcement and, as set forth above, Chemo is substantively involved in that effort.

Therefore, Chemo has engaged in affirmative acts against Acella with respect to the enforcement of the '227 patent, and declaratory judgment jurisdiction is established.

### b.  Chemo Has Refused to Enter Into an Agreement to be Bound by the New Jersey Litigation

Tellingly, although it represents that it has no intention of suing Acella, Chemo refuses to sign an agreement to be bound by any judgment in the New Jersey Action, and this factor also favors a finding of subject matter jurisdiction.  In particular, the Federal Circuit has recognized that the failure to execute a covenant not to sue can be indicative of an actual controversy for declaratory judgment purposes.  *See Arkema Inc. v. Honeywell Int'l*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (explaining that "Honeywell has declined to grant Arkema a covenant not to sue on the '120 and '882 patents, which further suggests that there is an active and substantial controversy between the parties regarding their legal rights with respect to those patents"); *see also 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1381 (Fed. Cir. 2012) (suggesting that the district court might conclude that defendant's "failure to provide 3M with a covenant not to sue did not, at the very least, lessen [the] existing controversy"); *Arris Group*, 639 F.3d at 1381 (concluding that, under the circumstances, the patentee's refusal to grant a covenant not to sue provided "a level of additional support for our finding that an actual controversy exists").  Given

Chemo's refusal to agree to be bound by the outcome of the New Jersey Action and provide a necessary covenant not to sue, its statements concerning lack of a present intent to sue Acella ring hollow. *See SanDisk Corp.*, 480 F.3d at 1382 (concluding that jurisdiction was established despite a "direct and unequivocal statement" that the patent owner had no intent to sue for infringement given the patent owner's course of conduct in enforcing patent rights).

The sole basis provided by Chemo for such refusal was that it does not wish to subject itself to personal jurisdiction by such a covenant. As an initial matter, it is unlikely that agreeing to be bound by any judgment in the New Jersey Action would, by itself, subject Chemo to personal jurisdiction. *Cf. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (suggesting that a covenant not to sue would not subject a licensor to personal jurisdiction under the "stream of commerce" theory). Moreover, and most importantly, 35 U.S.C. § 293 unquestionably subjects a foreign patent owner, such as Chemo, to personal jurisdiction in the United States in this very Court. Thus, this "excuse" cannot withstand scrutiny.

### c. Chemo's Alleged Inability to Sue Does Not Defeat Subject Matter Jurisdiction

Likely recognizing the above shortcomings, Chemo advances several other unavailing arguments. In particular, Chemo argues that it told Acella that it cannot sue Acella, that the agreements between Chemo and Everett prohibit Chemo from suing Acella, and that Chemo has confirmed, in writing, that it cannot sue Acella. Each of these asserted arguments is flawed.

Obviously, Acella is not obligated to rely upon Chemo's non-binding and self-serving statements. Therefore, Chemo's non-binding statements, whether in email or any other form, are not a sufficient basis to provide any proper legal assurances to Acella.

13

Second, Chemo argues that it "*cannot*" sue Acella based on its agreements with Everett. Specifically, Chemo argues that it has granted Everett the exclusive right to sue based on the '227 patent and, as such, Acella is not at risk of suit from Chemo.  This argument is also unpersuasive.  As mentioned above, at the time of filing this suit, Acella had not been provided with fully-executed copies of the asserted agreements.  Only after suit was filed and Everett's CEO was deposed did Everett provide documents purportedly executed by both Everett and Chemo.

The original License Agreement between Chemo and Everett, however, did not convey upon Everett the right to enforce the '227 patent.  *See* License Agreement (Dkt. No. 15-2). Instead, only the "Amendment to License Agreement" purports to convey to Everett the right to enforce the '227 patent.  *See* Amendment to License Agreement (Dkt. No. 15-3).  However, the Amendment to License Agreement that Chemo argues gives away its right to sue for infringement of the '227 patent is not supported by consideration.  Therefore, the Amendment, itself, is an invalid, and unenforceable, contract.  Such non-binding conveyances cannot be used to suggest that they deprive Chemo's ability to enforce a patent that it owns.

In any event, and even if it were true that Chemo lacked the ability to sue Acella for infringing the '227 patent, this fact alone would not defeat subject matter jurisdiction.  The Federal Circuit has recognized that a justiciable controversy can exist even when a party lacks standing to sue the other party.  For example, in *Arris Group, Inc. v. British Telecom. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011), the court explained that "[a] controversy as to a legal right may also arise in some cases where the declaratory defendant has no cause of action."  *Id.* at 1375 n.4.  This was the result where, for example, a statutory framework deprived a plaintiff generic drug maker of the legal right to market its drug absent a judicial finding that the listed patent was invalid or not infringed, even though the patentee had given the plaintiff a covenant

not to sue. *See, e.g.*, *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291–94 (Fed. Cir. 2008). Further, in *Hewlett-Packard*, the defendant repeatedly emphasized that, at the time the plaintiff filed its complaint it "could not have asserted its rights in the '021 patent against [the plaintiff] because it had not even determined if it had a basis to assert the patent against [the plaintiff]." *Hewlett-Packard*, 587 F.3d at 1363. The Federal Circuit found this "irrelevant," as the test for declaratory judgment jurisdiction is "objective," and "it is the objective words and actions of the patentee that are controlling." *Id.* (citations omitted). The court thus emphasized that "conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction." *Id.*

Based on the above, there is also a controversy where, as here, a patentee grants an exclusive license to an affiliated company but assists that company in enforcing the licensed patent against a third party. Said another way, Chemo cannot hide behind a license curtain that allegedly prevents Chemo from suing Acella in this Court while at the same time acting as a puppet master in its licensee's litigation against Acella in the New Jersey Action. Such actions by Chemo clearly demonstrate that an actual controversy between Chemo and Acella exists.

Moreover, the Supreme Court has made unmistakably clear—and Chemo's motion admits—that a **reasonable apprehension of suit** by Acella is **not** required for declaratory judgment jurisdiction to be established. In this regard, the facts of *Medimmune* are instructive. In that case, a declaratory judgment plaintiff actually held a license to a patent. So long as the licensee continued to pay royalties, the licensee could not be sued for infringing the patent. The licensee attempted to challenge that royalties were due for certain products. Despite the licensee not having ceased royalty payments and, therefore, remaining immune from suit by the patent owner, the Supreme Court held that declaratory judgment jurisdiction was established.

*MedImmune*, 549 U.S. at 137. Similarly here, jurisdiction is appropriate even if a reasonable apprehension of suit were not present, and whether Chemo is alone entitled to bring suit on its own behalf is not dispositive. Instead, the other factors discussed herein and pled in the Amended Complaint, including Chemo's affirmative acts, are more than sufficient to establish jurisdiction.

### d.  Chemo's Reliance on *Organic Seed Growers* is Misplaced

Furthermore, Chemo's reliance upon *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350 (Fed. Cir. 2013), is misplaced. In fact, that case actually **supports** the existence of subject matter jurisdiction in this case. In *Organic Seed Growers*, the Federal Circuit explained:

> While Monsanto's representations are not a covenant not to sue, they have a similar effect. ***If* we rely on Monsanto's representations to defeat the appellants' declaratory judgment claims (as we do), those representations are binding as a matter of judicial estoppel.** It is well-established that a party who ***successfully argues*** one position is estopped from later adopting a contrary position in a case involving the same patent. The main factors warranting judicial estoppel are (1) a party's later position is "clearly inconsistent" with its prior position, **(2) the party successfully persuaded a court to accept its prior position**, and (3) the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Should Monsanto sue the appellants for future actions falling within the scope of its representations in this litigation, all three factors would warrant the application of judicial estoppel. As the Supreme Court stated in Already, "[the defendant], having taken the position in court that there is no prospect of [infringement by the declaratory plaintiffs], would be hard pressed to assert the contrary down the road."

*Id.* at 1358–59 (emphasis added) (internal citations omitted). Thus, as set forth above, Chemo's mere statements that it "cannot" sue are not sufficient to create judicial estoppel. Instead, more is required. *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (explaining that "courts

regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled" and that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity").  As such, Acella is not required to rely upon such representations as binding and, in light of the applicable precedent, Acella would be foolish to do so.

Finally, even if accepted, Chemo's arguments regarding judicial estoppel are not sufficient to destroy jurisdiction in this case.  In particular, Chemo's disclaimer of its ability to sue is fairly narrow, and as the *Organic Seed Growers* court recognized, a narrow disclaimer may be insufficient to defeat subject matter jurisdiction where a declaratory judgment plaintiff is engaging in activities which may fall outside of the scope of that disclaimer.  *See Organic Seed Growers*, 718 F.3d at 1359.  Chemo has not agreed that it will *never* bring suit against Acella for infringement, and its disclaimer is limited to the '227 patent.  Chemo has not provided Acella with a covenant not to sue, but instead Chemo's non-committal actions and non-binding statements suggest that it may sue Acella down the road at some point.  In this regard, there is a continuation patent application pending that claims priority to the '227 patent and could be asserted against Acella when, and if, it issues (with Chemo again affirmatively involved). Furthermore, Chemo has refused to be bound by the judgment in the New Jersey Action, where its affiliate accuses Acella's PNV-First product of infringing the '227 patent.  Although Acella denies that its product infringes the '227 patent, absent written assurance from Chemo that it cannot and will not sue Acella on any patent that grants from the pending continuation application, Acella may be engaging in conduct which falls outside of Chemo's purported

17

disclaimer.  For this additional reason, Chemo's *argument* that it "cannot" sue Acella does not preclude jurisdiction.  *Cf. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1300 (Fed. Cir. 2009) (finding jurisdiction existed despite a covenant not to sue in light of the covenant not precluding claims on *future* products).

### 3.  Discretion Warrants Exercise of Jurisdiction Over this Case

With little basis, Chemo makes a last ditch effort to convince the Court to dismiss this case based on the Court's "discretion."  Such dismissal is unwarranted and unsupported.  Acella is currently defending itself against infringement claims in the New Jersey Action.  Given that Chemo purports to own the '227 patent and that the named inventors are employees of Chemo, Chemo likely has highly pertinent information for discovery.  If not a party to this suit, Acella may have to rely upon the costly and slow process of the Hague Convention to obtain the necessary discovery.  However, given that Chemo is subject to both personal and subject matter jurisdiction in this case, that discovery can be quickly and efficiently obtained.  Chemo chose not to assign the entire '227 patent to Everett and instead only granted a license.  Chemo should not be allowed to stand behind that hollow license to avoid subject matter jurisdiction.  As such, Chemo must stand and defend the patent that it purports to own.

In addition, as explained in detail above, Chemo has engaged in gamesmanship in attempting to avoid the manner of service ordered by this Court (and at an increased expense to Acella), in refusing to confirm whether its current motion would be maintained, in threatening two Rule 11 motions despite the ample grounds presented herein for jurisdiction, and in refusing consent to a two-day extension for this response to facilitate settlement discussions.  Such conduct should not be rewarded based on the Court's "discretion."  Instead, if anything, the Court's "discretion" should be applied to make Chemo answer to Acella's claims.  By

maintaining jurisdiction over this case, Acella is confident that continued gamesmanship will not be tolerated in this Court.

In view of these reasons, and absent *any* compelling reason from Chemo otherwise, exercise of the Court's discretion to retain jurisdiction over this case is both proper and warranted.

## **CONCLUSION**

For the foregoing reasons, subject matter jurisdiction is present in this case and Chemo's motion should be denied.


Respectfully Submitted,

ACELLA PHARMACEUTICALS, LLC
By Counsel


NELSON MULLINS RILEY & SCARBOROUGH, LLP


By: _____/s/_____
George E. Kostel, Esq. (VSB No. 34757)
Erika J. Karnaszewski, Esq. (VSB No. 76031)
Email: george.kostel@nelsonmullins.com
Email: erika.karnaszewski@nelsonmullins.com
101 Constitution Avenue, NW, Suite 900
Washington, D.C.  20001
Telephone:  (202) 712-2800
Facsimile:  (202) 712-2860

OF COUNSEL (admitted *pro hac vice*):

Neil C. Jones (SC State Bar No. 062911)
Ashley B. Summer (SC State Bar No. 67794)
Email: neil.jones@nelsonmullins.com
Email: ashley.summer@nelsonmullins.com
104 South Main Street / Ninth Floor
Post Office Box 10084 (29603-0084)
Greenville, SC  29601
Phone:  (864) 250-2260
Facsimile:  (864) 250-2394


*Counsel for Plaintiff Acella Pharmaceuticals, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2013, a copy of the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction was filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

> Paul Anthony Werner, III
> Sheppard Mullin Richter & Hampton LLP
> 1300 I Street NW
> 11th Floor East
> Washington, DC 20005-3314
> 202-637-5600
> Fax: 202-637-5910
> Email: pwerner@sheppardmullin.com
>
> *Counsel for Defendant Chemo S.A. France*


_____/s/_____
George E. Kostel, Esq. (VSB No. 34757)
Email: george.kostel@nelsonmullins.com
101 Constitution Avenue, NW, Suite 900
Washington, D.C.  20001
Telephone:  (202) 712-2800
Facsimile:  (202) 712-2860

*Counsel for Plaintiff Acella*
*Pharmaceuticals, LLC*